IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE EMMES COMPANY, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> SAP AMERICA, INC., <br><br> *Defendant.* | CIVIL ACTION <br> NO. 21-0019 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　April 28, 2021

### MEMORANDUM

The Emmes Company sued SAP America for its purported failure to deliver certain cloud-based human resource management products in a contractually agreed manner. SAP moves to dismiss the Complaint, and the Court grants the Motion in part and denies it in part.

I

A

Emmes, a "contract research organization," signed an Agreement with SAP to use SAP's cloud-based human resource management products ("Cloud Service") on April 25, 2018. (Compl. ¶¶ 1–3, ECF 1-1.)[1] To date, Emmes has paid over $85,000 for the Cloud Service. (*Id.* at ¶ 1.) But since purchasing it, Emmes has been "unable to

---

[1] Emmes represents the Agreement has seven components: "(1) an Order Form for Cloud Services, (2) a Service Level Agreement for SAP Cloud Services, (3) a Support Policy for SAP Cloud Services, (4) a Personal Data Processing Agreement for SAP Cloud Services, (5) General Terms and Conditions for SAP Cloud Services, (6) the SAP Consulting Services Supplemental Terms and Conditions to the General Terms and Conditions for SAP Cloud Services, and (7) the SAP SuccessFactors HCM Suite Supplemental Terms and Conditions." (Compl. ¶ 2.)

1

utilize [it] for its business purposes" because "constant error messages, missing data, and lack of support make the Cloud Service defective and unusable." (*Id.* at ¶ 30.)

While the Cloud Service is an SAP product, SAP "required" Emmes to work and separately contract with SAP's third-party partner AltaFlux Corporation to actually install and implement it. (*Id.* at ¶¶ 6, 8, 11.) Before SAP and Emmes entered their Agreement, SAP arranged several calls between itself, Emmes and AltaFlux to introduce AltaFlux and "task[] AltaFlux with providing training to Emmes personnel, managing communications between SAP and Emmes during the implementation period, exporting all of Emmes's employee data to the cloud service" and configuring certain Cloud Service modules "in a manner usable for Emmes's business purposes." (*Id.* at ¶¶ 6–9.) The Agreement names AltaFlux as the "Partner" responsible for "collaborat[ing] with [Emmes,] . . . assist[ing] with the project management and implementation of the Cloud Services of the Order" and serving as Emmes's "first point of contact." (*Id.* at 26.)[2] It describes AltaFlux as an independent entity:

> *5.3 Independence of Partner.* Partner (AltaFlux) is not an agent of SAP. It is an independent entity with no authority to bind SAP or to make representations or warranties on SAP's behalf.
>
> *5.4 No representations or warranties.* SAP makes no representations or warranties as to such authorized distributor or reseller, or any other third party, related to the performance of the products or services of such entities, and fully disclaims any such warranties . . . .

(*Id.* at 58.)

Despite AltaFlux's assistance, the Cloud Service was never properly implemented at Emmes. *See* (*id.* at ¶¶ 12–13, 15–20, 23–24). Among other issues,

---

[2] Citations to Complaint page numbers instead of paragraphs refer to exhibits attached to the Complaint which do not have separate filing numbers or consistent pagination. Exhibit citations reflect page numbers generated by the Court's electronic case filing system.

AltaFlux was unable to transfer all of Emmes's data from its previous human resource system, (*id.* at ¶¶ 16–19), did not properly train Emmes personnel, (*id.* at ¶¶ 21–22), and failed to enable customization features necessary for Emmes to enjoy "basic" use of the Cloud Service, (*id.* at ¶¶ 15, 18–19, 21). Some Cloud Service features never worked at all. (*Id.* at ¶ 23). Emmes and AltaFlux both submitted tickets to SAP requesting solutions for implementation issues, but they were never adequately resolved. (*Id.*) SAP tried itself to remedy certain problems, but failed and acknowledged "failures or shortcomings" in the Cloud Service itself were causing some of Emmes's issues. *See* (*id.* at ¶¶ 23, 25–26.) AltaFlux eventually "abandoned the project[,] leaving Emmes without a working system." (*Id.* at ¶ 24.)

On September 25, 2019, months after AltaFlux abandoned its work, Emmes's counsel wrote a letter to SAP explaining the Cloud Service was not operable, describing problems it encountered with the service and detailing deficiencies in AltaFlux's performance. *See* (*id.* at ¶ 28); *see also* (*id.* at 78–80). Counsel described the letter as "regarding Emmes's potential claims against Altaflux Corporation," but stated that "SAP required Emmes to work with AltaFlux" and "Emmes views SAP as responsible for the deficiencies in AltaFlux's work, and therefore responsible for the systems' operational failures." (*Id.* at 78.) SAP never responded. (*Id.* at ¶ 28.)

B

On May 26, 2020, Emmes sued SAP for breach of contract, negligence, vicarious liability and declaratory judgment.[3] *See* (*id.* at ¶¶ 31–39, 47–52, 55).[4] SAP moves to dismiss each claim. *See generally* (Mot. to Dismiss, ECF 11).

C

SAP warrants in the Agreement, which Emmes attached to its Complaint, that "the Cloud Service will substantially conform to the specifications contained in the Documentation during the Subscription Term for the Cloud Services" and that "the Service will materially conform to the specifications contained in . . . documentation containing the scope and service description for the relevant Service." (Compl. ¶ 29); (*Id.* at 58). "Documentation," where capitalized, refers to "SAP's then-current technical and functional documentation as well as any roles and responsibilities descriptions, if applicable, for the Cloud Service which is made available to [Emmes] with the Cloud Service." (*Id.* at 64.)

The Agreement states that as Emmes's "sole and exclusive remedy" under these warranties, SAP will correct or replace a materially nonconforming Cloud Service or terminate access to the nonconforming service if it is unable to correct nonconformance "using reasonable commercial efforts." (*Id.* at 59.) SAP will engage in remedial efforts "[p]rovided Customer (and/or Partner on Customer's behalf)" notifies SAP in writing

---

[3] Emmes filed its Complaint in the York County, Pennsylvania Court of Common Pleas, and SAP removed the case to the Middle District of Pennsylvania on May 29, 2020. *See* (Notice of Removal 1, ECF 1). The Middle District transferred the case to this Court pursuant to 28 U.S.C. § 1404(a) on December 30, 2020. *See* (Transfer Mem., ECF 21); (Transfer Order, ECF 22).

[4] The Complaint also alleges negligent misrepresentation in Count III, *see* (Compl. ¶¶ 41–47), but in its Response to SAP's Motion to Dismiss Emmes "concedes the [g]ist of the [a]ction doctrine bars its third count, for negligent misrepresentation," (Resp. to Mot. to Dismiss 4, ECF 26.) Count III of the Complaint is dismissed accordingly.

with a specific description of the Cloud Service's . . . nonconformance" that "include[s] sufficient detail for SAP to analyse the alleged nonconformance." (*Id.*)

The Agreement disclaims all other warranties:

> *7.6 Disclaimer*. Except as expressly provided in the Agreement, neither SAP nor its subcontractors make any representation or warranties, express or implied, statutory or otherwise, regarding any matter, including the merchantability, suitability, originality, or fitness for a particular use or purpose, non-infringement or results to be derived from the use of or integration with any products or services provided under the Agreement, or that the operation of any products or services will be secured, uninterrupted or error free. Customer agrees that it is not relying on delivery of future functionality, public comments or advertising of SAP or product roadmaps in obtaining subscriptions for any Cloud Service.

(*Id.* at 59–60.) It also contains an integration clause:

> *12.11 Entire Agreement*. The Agreement constitutes the complete and exclusive statement of the agreement between SAP and Customer in connection with the parties' business relationship related to the subject matter of the Agreement. All previous representations, discussions, and writings (including any confidentiality agreements) are merged in and superseded by the Agreement and the parties disclaim any reliance on them.

(*Id.* at 63.)

Pennsylvania law governs "[t]he Agreement and any claims relating to its subject matter." (*Id.*) SAP or Emmes must "initiate a cause of action for any claim(s) relating to the Agreement and its subject matter within one year from the date when the party knew, or should have known after reasonable investigation, of the facts giving rise to the claim(s)." (*Id.*)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

### III

### A

In Count I of the Complaint, Emmes asserts its breach of contract claim—primarily in one paragraph:

> SAP failed to perform as provided in the Agreement in a manner that conforms to the expectations set forth in the Agreement.  The Cloud Service remains unusable for Emmes's business purposes.  SAP's failure to provide the agreed upon services is a material breach of the Agreement between the parties.

Compl. ¶ 34; *see also* (Resp. to Mot. to Dismiss 3, ECF 26) (identifying Complaint paragraph 34 as alleging SAP's contractual breaches). To state a claim for breach of contract, a plaintiff must establish : "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *See Ware v. Rodale Pres, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (internal quotations and citation omitted).

SAP argues Emmes's claims under the Agreement are "limited to . . . claim[s] for breach of express warranty" because the Agreement contains a limited warranty and disclaims all others, (Mot. to Dismiss 5–6), though it cites no law supporting that conclusion. It further contends Emmes has not sufficiently pled breach of contract or breach of warranty, both because it has not shown the Cloud Service did not conform to the "Documentation" SAP provided to it and because it fails to demonstrate it gave SAP proper notice of SAP's nonconformance with the Agreement's warranties. (*Id.* at 5–8.)

Emmes has stated a plausible breach of contract claim.[5] The Complaint alleges the existence and terms of Emmes' Agreement with SAP. Emmes claims the Cloud Service was error-ridden and SAP failed to perform in accordance with the Agreement, which suggests the Cloud Service did not "conform to the specifications contained in the Documentation" given to Emmes or "materially conform to the specifications contained in . . . documentation containing the scope and service description" of the Cloud Service

---

5 Emmes will be allowed to amend its Complaint. If it chooses to do so, and intends to pursue a claim for breach of warranty instead of breach of contract, it should revise Count I to make this clear and state a plausible breach of warranty claim. It should also note it cannot simultaneously pursue breach of contract and breach of warranty claims premised on the same harm. *See, e.g.*, *Pansini v. Trane Co.*, No. 17-3948, 2019 WL 1299036, at *8 (E.D. Pa. Mar. 21, 2019), *reconsideration denied*, 2019 WL 2409740 (E.D. Pa. June 7, 2019) (collecting cases dismissing breach of contract claims duplicative of alleged breach of warranty claims).

as promised in the Agreement. At this stage, Emmes is not required to provide or allege the full scope of documentation it received to state a claim. *See, e.g.*, *Connelly*, 809 F.3d at 786 ("The [Federal] Rules demand 'only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting *Twombly*, 550 U.S. at 555). Moreover, Emmes explains it has been unable to use the Cloud Service even though it has already paid tens of thousands of dollars for it.

SAP suggests its warranty obligations under the Agreement were not "trigger[ed]" because Emmes cannot show it gave SAP proper notice regarding the Cloud Service's nonconformance with the warranties. *See* (Mot. to Dismiss 5–6, 8). But the Agreement's notice requirement pertains only to SAP's remedial responsibilities for providing a nonconforming service—not its responsibility to provide a conforming service in the first place. *See* (Compl. at 59). And, in any event, Emmes's allegations that Emmes and AltaFlux submitted "tickets" to SAP regarding implementation issues and that SAP itself unsuccessfully attempted to address various implementation problems show SAP had some form of notice about problems with the Cloud Service. *See* (*id.* at ¶¶ 16, 23, 25–27). Exhibits attached to the Complaint demonstrate at least some of that notice was written. Emmes sent its letter to SAP in September of 2019 and exchanged at least one set of emails with SAP in April of 2019 about problems with the Cloud Service. *See* (*id.* at 75–77, 80).

B

In Count II, Emmes alleges SAP was negligent for selecting AltaFlux as Emmes' implementation partner. (Compl. ¶¶ 36–39.) According to Emmes, SAP had a duty of

care to Emmes in selecting its implementation partner "to ensure Emmes received a working and properly implemented Cloud Service." (*Id.* at ¶ 36.) SAP breached that duty when it required Emmes to use AltaFlux, which "SAP knew or should have known[] lacked knowledge, training, and was unqualified to perform the work necessary for implementation of SAP's Cloud Service." *See* (*id.* at ¶¶ 36–37).

SAP contends this claim is barred by the Agreement's express terms, the gist of the action doctrine and the statute of limitations. *See* (Mot. to Dismiss 10–14). SAP argues the Agreement "fully and completely document[s]" its relationship with Emmes because of the integration clause, which again states that "[a]ll previous representations, discussions, and writings" between the Parties "are merged in and superseded by the Agreement." (*Id.* at 11–12.) SAP further points out that it "expressly disclaimed any representation or warranty about AltaFlux" and established its independence from AltaFlux in the Agreement. (*Id.* at 12–13.) SAP cites no law to support these arguments. *See generally* (*Id.* at 11 – 13.) The Court, however, understands SAP to be contending it had no duty to Emmes with respect to AltaFlux's selection because of the Agreement.

To state a negligence claim under Pennsylvania law, a plaintiff must allege facts sufficient to show the following: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and resulting injury; and (4) actual loss or damages." *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 817 (E.D. Pa. 2016) (citing *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002)). In any negligence action, "establishing a breach of a legal duty is a

condition precedent to a finding of negligence." *Estate of Swift v. Ne. Hosp. of Phila.*, 456 Pa. Super. 330, 690 A.2d 719, 722–23 (Pa. Super. Ct. 1997) (citation omitted).

The Complaint alleges "SAP had a *contractual* duty to use reasonable and ordinary care in selecting an implementation partner for Emmes." (Compl. ¶ 36 (emphasis added).) In its Response to SAP's Motion, Emmes says it made a mistake in labeling SAP's duty contractual. (Resp. to Mot. to Dismiss 6 n.1). Indeed, the Agreement does not support that claim. The Agreement is silent both as to how AltaFlux was selected to work with Emmes and as to any duty SAP owed Emmes in selecting AltaFlux, and its plain language says "SAP makes no representations or warranties . . . related to the performance of the products or services" of third parties like AltaFlux. *See generally* (Compl. 58); *see also Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) ("[W]hile Plaintiffs' well-pleaded allegations must be accepted as true for purposes of [a motion to dismiss], the Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies.") (citation omitted).

The Complaint thus fails to plausibly allege SAP owed Emmes a duty with respect to AltaFlux's engagement. The facts alleged demonstrate AltaFlux's selection preceded the Agreement and any clearly defined relationship between SAP and Emmes and do not explain why or how SAP owed Emmes any duty at that time.

Emmes makes several allegations in the Complaint that AltaFlux acted as SAP's "actual/or apparent agent" in implementing the Cloud Service, *see* (Compl. ¶¶ 48–50), which, if true, could potentially support a claim that SAP owed Emmes some duty of care arising from the agency relationship. *See, e.g.*, *Young v. Home Depot U.S.A., Inc.*,

10

No. 15-cv-5436, 2016 WL 8716423, at *7 (E.D. Pa. Sept. 30, 2016) (while discussing gist of the action doctrine, stating "Pennsylvania recognizes causes of action for negligent hiring, supervision and retention and these claims involve violations of broader, social duties owed to all individuals which exist regardless of the presence of a contract"). Those allegations, however, are entirely conclusory:

> 48. AltaFlux at all times relevant to this lawsuit was the agent of SAP.
>
> 49. The above-described acts of AltaFlux were committed while acting as an actual/apparent agent, representative or contractors of SAP.
>
> 50. The above-described acts of AltaFlux were committed within the scope of their actual and/or apparent agency while performing services for SAP and/or furthering the business interests of SAP.

(Compl. ¶¶ 48–50.) Emmes fails to allege any facts establishing an agency relationship between SAP and Emmes. *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 511 (E.D. Pa. 2009) ("An agency relationship can be established in four ways: (1) express authority; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel.") (internal quotations and citation omitted); *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-cv-2379, 2015 WL 365681, at *10 (M.D. Pa. Jan. 27, 2015) ("Under the federal rules, a plaintiff must plead enough facts from which a plausible claim of an agency relationship can be inferred . . . not simply assert in conclusory terms that a party is another party's agent.") (internal quotations and citation omitted). To the contrary, it alleges AltaFlux is a third party "Partner" with whom Emmes contracted separately and shows the Agreement disclaims an agency relationship between SAP and AltaFlux.

11

Because Emmes has not adequately pled a negligence claim, the Court need not address whether such a claim would be barred by the gist of the action doctrine or the statute of limitations. Count II is dismissed without prejudice.

C

In Count IV, Emmes alleges SAP is vicariously liable for AltaFlux's shortcomings because AltaFlux acted in its capacity as SAP's actual or apparent agent. (Compl. ¶¶ 48–52.) Emmes does not state any theory of liability against AltaFlux which could be imputed to a purported agent.

For the reasons already stated in Section III.B, this claim fails because Emmes has not established an agency relationship between AltaFlux and SAP. This claim is also deficient, however, because "there is no independent cause of action for respondeat superior under Pennsylvania law." *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012); *see also Care v. Reading Hosp. and Med. Ctr.*, No. 2003-cv-04121, 2004 WL 728532, at *13 (E.D. Pa. Mar. 31, 2004) ("[R]espondeat superior merely connotes a doctrine of imputation once an underlying theory of liability has been established. It is not a separate cause of action.") (internal quotations and citation omitted). Count IV is dismissed without prejudice.

D

In Count V, Emmes seeks a declaratory judgment from the Court (i) finding SAP breached the Agreement; (ii) finding SAP owed and breached a duty of care to Emmes in selecting AltaFlux as Emmes's Cloud Services implementation partner; (iii) awarding Emmes $85,654 in damages; and (iv) awarding Emmes costs, attorneys' fees and any additional appropriate relief. SAP argues Count V should be dismissed

12

because the issues it raises and relief it seeks are duplicative of the Complaint's other claims. (Mot. to Dismiss 17–18.) .

Under the Declaratory Judgment Act, the Court "may," but is not required to, "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Our Court of Appeals requires declaratory judgments 'have utility' and 'be of significant practical help in ending the controversy.'" *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019) (quoting *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995) and *Step-Saver Data Sys. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990)). The Third Circuit Court of Appeals has also instructed that "[a] federal court should . . . decline to exercise its discretionary jurisdiction" over declaratory judgment actions "when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000). Courts routinely dismiss claims for declaratory relief that are duplicative of other claims already alleged, including negligence and breach of contract claims. *See, e.g.*, *LM Gen. Ins. Co. v. Lebrun*, 470 F. Supp. 3d 440, 456 (E.D. Pa. 2020); *Nkansah v. Kleinbard LLC*, No. 19-4472, 2020 WL 920269, at *7 (E.D. Pa. Feb. 26, 2020).

None of the issues raised in Count V are independent of Emmes's breach of contract and negligence claims, and the Court's adjudication of those claims will necessarily require resolution of Count V's issues. The Court declines to exercise its discretionary jurisdiction and grants SAP's Motion with respect to Count V.

IV

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations. *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019). Emmes may amend Counts II and IV of the Complaint, and Count I if and as necessary, consistent with this Memorandum and to the extent it can allege facts sufficient to state plausible claims for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.